Larry T. BASS, Plaintiff–Appellee,

v.

William T. RICHARDS, Sheriff; Russell Hebert, Undersheriff; and Tim Evans, Deputy Sheriff, Defendants–Appellants,

and

The Board of County Commissioners of the County of Archuleta, State of Colorado, Defendant.

No. 01–1202.

United States Court of Appeals, Tenth Circuit.

Aug. 14, 2002.

Jonathan A. Cross (Robert M. Liechty with him on the briefs) of Cross & Liechty, P.C., Denver, CO, for Defendants–Appellants.

G. Stephen Long (Joseph J. Mellon and Brian R. Reynolds with him on the brief) of Shughart Thomson & Kilroy, P.C., Denver, CO, for Plaintiff–Appellee.

Before HENRY, ANDERSON, and MURPHY, Circuit Judges.

MURPHY, Circuit Judge.

## I. INTRODUCTION

Appellants Richards, Hebert, and Evans are police officials of Archuleta County, Colorado. Appellee Bass brought suit against them under 42 U.S.C. § 1983 alleging that they had violated his First Amendment speech and association rights. Appellants moved for summary judgment asserting a qualified immunity defense. They appeal the district court's denial of that motion. This court has jurisdiction under 28 U.S.C. § 1291 over several, but not all, of Appellants' claims. We **affirm** in part and **dismiss** in part.

## II. BACKGROUND

Pagosa Lakes Property Owners Association ("Pagosa Lakes") is a resort community of approximately 4,500 residents near the town of Pagosa Springs in Archuleta County, Colorado. Because of the limited manpower of the Pagosa Springs and Archuleta County police forces, Pagosa Lakes maintained its own police department, the Public Safety Office. Larry Bass worked as the Chief of the Office. The Public Safety Office worked closely with the Archuleta County Sheriff's Office. To give Bass and other public safety officers at Pagosa Lakes the authority to make arrests and investigate crimes, the Sheriff deputized the Pagosa Lakes officers. Each held the title of "reserve deputy" in the Sheriff's office. Though Bass and the other Pagosa Lakes officers were based at the Public Safety Office at Pagosa Lakes, as reserve deputies they were under the direct supervision of employees of the Sheriff's office.

Sometime prior to the summer of 1997, Bass talked with his friend, Lee Vorhies, about Vorhies' interest in running for Archuleta County Sheriff in the November 1998 election. During the summer of 1997, Bass began privately supporting Vorhies to run against the incumbent Sheriff Richards. Bass never campaigned for Vorhies or otherwise publicly supported Vorhies' campaign. The Sheriff's office became aware of Bass' private support for Vorhies sometime that summer. Undersheriff Hebert was informed by another individual that Bass was supporting Vorhies and had said that "the money and machinery are in place." Hebert decided to approach Bass about his political activities and arranged several meetings with Bass throughout the summer. In a June 1997 meeting, Hebert "cautioned Bass ... about politics against the Sheriff." In a

July meeting, Hebert told Bass that "he owed loyalty to the Sheriff." In that same meeting, Bass denied publicly supporting Vorhies, but he did reveal to Hebert that he preferred Vorhies' political philosophy. Also in July 1997, employees of the Sheriff's office met with Sheriff Richards to discuss Bass' support of Vorhies. The possibility of removing Bass' reserve deputy commission was discussed but all agreed that such an action would violate Bass' First Amendment rights. Bass had several additional meetings with Sheriff's office employees, including the Sheriff, during the summer and fall of 1997. In some of those meetings, employees made statements that Bass interpreted as threats, including an incident in which Appellant Evans shook his finger at Bass and said it was Evans' "mission to make sure that Sheriff Richards gets reelected."

In November 1997, Bass testified in an unrelated state criminal trial. After several days of testimony, the state judge granted the defendant's motion to dismiss the charges. In his minute order, the judge stated that Bass "withheld information within his knowledge, even when he found out about its importance to the case and was requested to provide any pertinent information to the case." The judge also stated that Bass had improperly marked evidence bags after learning of their importance to a suppression motion. Because of these improprieties, the judge dismissed the charges. The Sheriff's office suspended Bass' reserve deputy commission in December 1997 and conducted an investigation into Bass' role in the dismissed criminal case. Following the investigation, Bass' reserve deputy commission was revoked permanently in January 1998. For purposes of summary judgment and this appeal, however, Appellants concede that Bass' commission was revoked because of his support for Vorhies, not because of Bass' conduct in the criminal trial.

Following Bass' suspension, he became interested in running for Sheriff. Consequently, Bass, Vorhies, and supporters of both men held a meeting in which they discussed which man would make a better candidate against Sheriff Richards in the November 1998 election. The meeting concluded with a decision that Vorhies alone should run against Richards. Vorhies' candidacy became official then or shortly thereafter. Bass supported Vorhies through the primary in August 1998 in which Vorhies was defeated.

Bass brought suit in federal district court alleging that Appellants violated his free speech and association rights when they removed his commission because of Bass' comments about his preference for Vorhies and his association with Vorhies. Appellants moved for summary judgment on the basis of qualified immunity. Among other things, they argued that *Pickering v. Board of Education* only prohibited employee termination based on speech about a matter of public concern. *See* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). They contended that Bass had only privately supported an unannounced candidate, and it was not clearly established that such speech was about a matter of public concern. The district court rejected this argument, ruling that because Appellants admitted they knew Bass was supporting Vorhies, the support was not private speech. The district court also rejected Appellants' argument that Bass' right to associate with an unannounced candidate was not clearly established.

## III. APPELLATE JURISDICTION

 This is an interlocutory appeal of the denial of Appellants' summary judgment motion. This court has no jurisdiction over appeals to non-final orders ab-

sent some specific statutory grant. *See* 28 U.S.C. § 1291. The denial of a summary judgment motion ordinarily is not an appealable final order. *See Schmidt v. Farm Credit Servs.*, 977 F.2d 511, 513 n. 3 (10th Cir.1992). It is subject to appeal, however, when the defendants are public officials asserting a qualified immunity defense and the appealed issue is whether a given set of facts establishes that defendants violated clearly established law. *See Mitchell v. Forsyth*, 472 U.S. 511, 528, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). Those portions of the summary judgment denial, however, which involve a determination of evidence sufficiency, *i.e.*, whether there exists a genuine issue of material fact, are not appealable. *See Johnson v. Jones*, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). In other words, the scope of interlocutory appeals to denials of qualified immunity is limited to "purely legal" challenges to the denial. *See Shinault v. Cleveland County Bd. of County Comm'rs*, 82 F.3d 367, 370 (10th Cir.1996) (quotation omitted). "Our jurisdiction, then, turns on what portion of the district court order [defendants] appeal[ ]." *Id.*

Appellants raise four general issues: (1) whether it was clearly established that the mere removal of a commission is sufficiently punitive to infringe upon Bass' speech and association rights; (2) whether it was clearly established that Bass' speech was on a matter of public concern and thus protected; (3) whether Bass' right to associate with an unannounced political candidate was clearly established; and (4) whether the evidence presented was sufficient to demonstrate that Appellant Evans participated in a conspiracy to deprive Bass of his constitutional rights.

■ Appellants' fourth contention is a factual one over which we have no jurisdiction. Appellants argue that Evans has qualified immunity because the "facts are completely insufficient" to show that he knowingly participated in a conspiracy to violate Bass' rights.[1] In *Johnson v. Jones,* the defendant officials challenged the district court's determination that there was an issue of fact regarding the officials' participation in the beating of the plaintiff. *See* 515 U.S. at 313, 115 S.Ct. 2151. The Supreme Court held that such a determination was not an appealable final order. *See id.* Appellants' challenge is essentially the same as that made in *Johnson v. Jones,* and this court does not have jurisdiction to consider it.

The first three issues, however, are purely legal and we have jurisdiction to consider them. Bass contends[2] that the district court determined that a genuine issue of material fact existed as to the Sheriff's intent in stripping Bass' commission, a necessary element to Bass' speech and association claims. It is apparent, however, that the district court's denial of qualified immunity did not turn on this disputed fact. Appellants argued below that even if the Sheriff removed the commission to punish Bass for his speech, they were entitled to qualified immunity because: (1) the removal of Bass' commission was not sufficiently punitive to infringe upon Bass' rights, (2) his speech was not on a matter of public concern, and (3) his right to associate with an unannounced political candidate was not clearly established. The district court reached all of

---

1. The district court did not explicitly consider this argument. The order denying summary judgment, however, must be read as an implicit denial of the motion on this basis.

2. Bass withdrew his jurisdictional objections at oral argument. This court must nevertheless satisfy itself as to jurisdiction. *See Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541, 106 S.Ct. 1326, 89 L.Ed.2d 501 (1986).

these legal arguments and rejected them. Appellants seek review of the district court's rejection of these legal arguments. They do not argue that their summary judgment motion should have been granted because the district court erroneously concluded an issue of fact existed regarding the Sheriff's intent. *Cf. Shinault*, 82 F.3d at 370 (dismissing appeal when defendant public official challenged on appeal district court's finding of a question of fact regarding official's intent in dismiss plaintiff); *Mick v. Brewer*, 76 F.3d 1127, 1133 (10th Cir.1996) (dismissing appeal when defendant public official challenged districts court's finding of disputed facts precluding summary judgment). The district court assumed the Sheriff harbored an intent to retaliate when it made its qualified immunity rulings. When the district court assumes facts in order to make legal determinations, it is appropriate for this court to consider appeals to the legal determinations and accept as given the assumed facts. *See Johnson*, 515 U.S. at 319, 115 S.Ct. 2151 ("When faced with an argument that the district court mistakenly identified clearly established law, the court of appeals can simply take, as given, the facts that the district court assumed.").

Bass points out that the district court also determined that a genuine issue of fact existed whether the loss of his commission led to his dismissal from his job as Chief of Police at Pagosa Lakes. Again, Appellants do not challenge this factual issue on appeal. Rather, they appeal the district court's ruling that merely removing Bass' commission amounts to retaliation violating Bass' speech and association-

al rights. We have jurisdiction to review this determination.

## IV. DISCUSSION

We review the denial of a summary judgment motion raising qualified immunity *de novo*. *See Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir.2001). To successfully resist a motion for summary judgment based on qualified immunity, the plaintiff must allege sufficient facts to demonstrate that his constitutional rights were violated and demonstrate that the rights were clearly established at the time defendants acted. *See Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir.1995). As stated, Appellants raise three arguments over which we have jurisdiction: (1) whether the district court erred in concluding that it was clearly established that mere removal of his commission infringed upon Bass' speech and association rights; (2) whether the district court erred in concluding that it was clearly established that Bass' speech was on a matter of public concern and thus protected; and (3) whether Bass' right to associate with an unannounced political candidate was clearly established.

### A. Removal of the Commission

Appellants argue that Bass' speech and association rights were not violated by the removal of his commission. They contend that Bass lost his job with Pagosa Lakes ten months after the removal of his commission, and since the removal had no immediate effect on Bass' employment it could not infringe on his constitutional rights.[3] We disagree. Appellants "fail[ ] to recognize that there are deprivations less harsh than dismissal that never-

---

**3.** The district court determined that a genuine issue of fact existed regarding whether the removal of Bass' commission caused Pagosa Lakes to terminate his employment. To the extent Appellants are arguing that the remov-

al of his commission did not lead to the loss of Bass' job with Pagosa Lakes, the argument is factual and we will not consider it in this interlocutory appeal.

theless press state employees ... to conform their belief and associations to some state-selected orthodoxy." *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 75, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). A government need not cause an individual to lose his job in order to infringe on constitutionally protected activity. Rather, the government infringes upon protected activity whenever it punishes or threatens to punish protected speech. *See Phelan v. Laramie County Cmty. Coll. Bd.*, 235 F.3d 1243, 1247 (10th Cir.2000). The commission was a valuable government benefit. The commission entitled Bass to effect arrests and investigate crimes, necessary experience to any individual interested in a law-enforcement career. Depriving and threatening to deprive Bass of such a benefit was punishment that could inhibit speech and thus could infringe on Bass' First Amendment rights. *Compare Andersen v. McCotter*, 100 F.3d 723, 727 (10th Cir.1996) (depriving government intern of valuable volunteer experience because of protected speech infringes on her constitutional rights), *with Phelan*, 235 F.3d at 1248 (censure of Board member did not infringe protected activity since it "carried no penalties; it did not prevent her from performing her official duties"). Moreover, it was clearly established in 1997 that such punishment, which cannot be labeled minimal or wholly subjective, infringed upon Bass' rights. *See Andersen*, 100 F.3d at 727. *See generally Phelan*, 235 F.3d at 1247–48 (citing Supreme Court precedent from the 1950s through the 1980s).

## B. Speech Claim

 In *Pickering v. Board of Education*, the Supreme Court held that the government as an employer does not have unchecked power to limit its employees' speech on matters of public concern. *See* 391 U.S. at 568, 88 S.Ct. 1731.[4] Rather, when the government restricts the speech rights of its employees, its interest in limiting the speech must be balanced against the employees' interest in speaking. *Id.; Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). To prevail on a *Pickering* claim the employee must demonstrate that: (1) the speech in question involves a matter of public concern; (2) his interest in engaging in the speech outweighs the government employer's interest in regulating it; and (3) the speech was a substantial motivating factor behind the government's decision to take an adverse employment action against the employee. *See Horstkoetter v. Dep't of Pub. Safety*, 159 F.3d 1265, 1271 (10th Cir.1998). If the employee makes the required showing, the government employer may escape liability if it can show that it would have taken the same employment action in the absence of the protected speech. *See id.* Whether speech involves a matter of public concern and whether the employee's interest outweighs the employer's are questions of law for the court; whether speech was a substantial motivating factor and whether the employer would have made the same employment decision in the absence of the speech are questions of fact for the jury. *See id.* Appellants' arguments relating to Bass' *Pickering* claim can be read to raise only one issue: whether Bass spoke on a matter of public concern. Accordingly, we will address only this question with respect to the *Pickering* analysis. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n. 7 (10th Cir.1994) (holding failure to raise issue constitutes waiver).

---

**4.** Both parties agree that *Pickering* applies. *Cf. Bd. of County Comm'rs v. Umbehr*, 518 U.S. 668, 676–79, 116 S.Ct. 2342, 135 L.Ed.2d 843 (1996) (holding restrictions on independent contractor speech governed by *Pickering* analysis).

■ Bass' speech consisted of his statements to several individuals about his support, albeit private, of Vorhies and his preference for Vorhies' political philosophy. A chronology of events compiled by Undersheriff Hebert states that Bass told a district attorney employee that he was supporting Vorhies and that "the money and machinery are in place." Bass disputed that characterization of his statement, insisting that he merely said that "it looks like" Vorhies would run and that "he probably was financially capable of doing it." Hebert then had a series of meetings with Bass throughout the summer of 1997. Bass denied publicly supporting Vorhies during these meetings, but he said specifically he preferred Vorhies' political philosophy to the Sheriff's.

■ Such speech involves a matter of public concern. Generally, speech involves a matter of public concern when it is "of interest to the community, whether for social, political, or other reasons," rather than a matter of a mere personal interest to the speaker. *See Horstkoetter*, 159 F.3d at 1271 (quotation omitted). Speech relating to internal personnel disputes and working conditions does not touch upon matters of public concern. *See David v. City & County of Denver*, 101 F.3d 1344, 1355 (10th Cir.1996). Speech about political elections, however, undoubtedly does. *See Cragg v. City of Osawatomie*, 143 F.3d 1343, 1346 (10th Cir.1998). Bass' speech had no relation to matters such as working conditions. Instead, his speech relates to his assessment of the viability of a potential candidate's campaign and his belief about the relative merits of two potential candidates for public office. Such political speech is at the core of protected speech. *See id.* Furthermore, it is irrelevant that Bass only spoke to employees of the Sheriff's office and not the public at large. Speech not broadcast to the public but made in private to the government employer may still be speech about a matter of public concern. *See Givhan v. W. Line Consol. Sch. Dist.*, 439 U.S. 410, 415–16, 99 S.Ct. 693, 58 L.Ed.2d 619 (1979).

■ Simply because the facts as alleged and supported on summary judgment demonstrate that the Appellants violated Bass' right to free speech does not end the qualified immunity analysis. Rather, Bass' right to comment upon his assessment of potential candidates for sheriff must be clearly established at the time his commission was removed. *Jantzen v. Hawkins*, 188 F.3d 1247, 1258 (10th Cir.1999). A right is clearly established when "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quotation omitted). All the plaintiff need show is "that there is a Supreme Court or Tenth Circuit decision on point." *Horstkoetter*, 159 F.3d at 1278 (quotation omitted).

The citizenry's ability to make known their assessment of a candidate's qualifications for public office is "integral to the operation of the system of government established by our Constitution." *Buckley v. Valeo*, 424 U.S. 1, 14, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam). Accordingly, "[t]he First Amendment affords the *broadest* protection to such political expression." *Id.* (emphasis added). It is thus clear that one has a right to speak one's mind on the fitness of candidates for public office. *See Gardetto v. Mason*, 100 F.3d 803, 812 (10th Cir.1996); *see also Eu v. San Francisco County Democratic Cent. Comm.*, 489 U.S. 214, 223, 109 S.Ct. 1013, 103 L.Ed.2d 271 (1989) (invalidating state prohibition of endorsement of candidates in primaries by political parties). Appellants make much of the fact that Vorhies had not announced his candidacy at the time Bass spoke about his preference for

Vorhies. They argue that there is no Supreme Court or Tenth Circuit precedent establishing a right to comment on potential political candidates. We are not persuaded.

Bass' speech touched on more than his preference for one unannounced candidate over another; he endorsed one individual's political philosophy over another's. It is well-established that freedom of expression encompasses the freedom to opine generally on "public questions" and to engage in political discussion. *New York Times Co. v. Sullivan*, 376 U.S. 254, 269, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The First Amendment "embodies our profound national commitment to the free exchange of *ideas*." *Ashcroft v. Am. Civil Liberties Union*, 535 U.S. 564, 122 S.Ct. 1700, 1707, 152 L.Ed.2d 771 (2002) (emphasis added) (quotation omitted). While the right to comment on a candidate is an important component of such a discussion, it is not the only speech protected by the Amendment. *See Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 16 L.Ed.2d 484 (1966) (observing that the free discussion of "all matters relating to political processes" is protected, one of which is a discussion of political candidates). Bass' expression of his preference for one philosophy over another is the type of pure political opinion that has been long protected. Consequently, a reasonable official would understand that removing Bass' commission based on his expressed preference for one individual's philosophy over another and his assessment of Vorhies' campaign violated Bass' free speech rights.

## C. Association Claim

■ An employee can establish a violation of his association rights if he demonstrates that "(1) political affiliation and/or beliefs were substantial or motivating factors behind [his] dismissal; and (2)[his] position[ ] did not require political allegiance." *Jantzen*, 188 F.3d at 1251 (quotations omitted).[5] For purposes of this appeal, Appellants have conceded that Bass' affiliation with Vorhies and lack of affiliation with the Sheriff were the motivating factors behind the removal of his commission. Similarly, they do not argue that Bass' position requires political allegiance to the Sheriff as a matter of law. Instead, Appellants argue that they are entitled to qualified immunity because Bass' right to affiliate himself with Vorhies, an unannounced candidate, was not clearly established at the time his commission was removed.

■ It is clear that the First Amendment protects employees from "official pressure ... to work for political candidates not of the worker's own choice." *Connick*, 461 U.S. at 149, 103 S.Ct. 1684; *see also O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 720, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996) (observing that "[t]here is no doubt" employee could not be discharged for refusing to contribute to incumbent's campaign). It is also clearly established that the First Amendment prohibits the dismissal of an employee because of his privately held political beliefs. *See Branti v. Finkel*, 445 U.S. 507, 516–17, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980). Thus, support of or membership in a political party is not a valid ground for

5. Again, both parties agree that this is the proper analytical framework to apply to Bass' association claim. *Cf. O'Hare Truck Serv., Inc. v. City of Northlake*, 518 U.S. 712, 721, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996) (holding *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), and *Branti v. Finkel*, 445 U.S. 507, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980), line of cases applies to restriction on independent contractors' association rights).

termination of a government employee whose position does not demand political loyalty. *See id.* at 517, 100 S.Ct. 1287; *see also Elrod v. Burns*, 427 U.S. 347, 351, 357, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) (holding discharge of persons who failed to support or join political party unconstitutional). Furthermore, even at the time Bass' commission was removed, it was clear that there is no meaningful distinction for First Amendment purposes between nonpartisan political alignment and membership in a political party. *See Green v. Henley*, 924 F.2d 185, 187 (10th Cir.1991) (equating political loyalty to party affiliation); *Dickeson v. Quarberg*, 844 F.2d 1435, 1441 (10th Cir. 1988) (equating party affiliation to "particular political association and support" of candidate).

 Bass, like the partisans in *Elrod* and *Branti*, suffered an adverse employment action because his political alignment and beliefs were at odds with his employer's. The plaintiffs in those cases were not required to demonstrate that they suffered an adverse employment action because of their support for an actual candidate. Rather, it was sufficient that they were fired for failing to endorse or pledge allegiance to a particular political ideology. *See Branti*, 445 U.S. at 517, 100 S.Ct. 1287; *Elrod*, 427 U.S. at 351, 357, 96 S.Ct. 2673 (plurality opinion); *see also Rutan*, 497 U.S. at 76, 110 S.Ct. 2729 (holding denial of "promotions, transfers, or rehires for failure to affiliate with and support the Republican Party" violates First Amendment). Bass was fired for the same reason: he did not change his personal belief that an individual with Vorhies' philosophy would make a better sheriff than Sheriff Richards. Because a reasonable official would understand that Bass' commission could not be removed simply because of his political alignment and beliefs, Appel-

lants are not entitled to qualified immunity from the association claim.

## V. CONCLUSION

This court concludes that it does not have appellate jurisdiction over Appellants' claim that the evidence is insufficient to demonstrate that Evans participated in a conspiracy to deprive Bass of his constitutional rights. Therefore, that portion of the appeal is **DISMISSED**. We further conclude that Appellants are not entitled to qualified immunity from Bass' speech and association claims. The judgment of the District Court for the District of Colorado is **AFFIRMED**.