HOLLOWAY, Circuit Judge,
dissenting.
I respectfully dissent as explained below.
I
Plaintiff-appellant Weise expressed an opinion on a matter of great public concern *1171 in a manner that has become very familiar in recent decades: She put it on a bumper sticker affixed to her car, stating bluntly: “No more blood for oil.” As was said about a sign carried by a protestor against another war more than thirty years ago, “[t]he message that [she] sought to communicate was an expression of her views about important public questions and policies. This kind of expression is entitled to the greatest constitutional protection.” Glasson v. City of Louisville, 518 F.2d 899, 904 (6th Cir.1975) (emphasis added).
Ms. Weise’s expression did not, however, receive the protection to which it was entitled. Instead, because she had expressed an opinion that operatives of the executive branch disapproved, she and two of her Mends—who have not been shown to have any responsibility for the bumper sticker and who may or may not have agreed with its message—were rudely, publicly, and forcefully ejected from a public meeting to which they had properly gained admission by complying with the requirements that had been established. The speaker at the meeting was the President of the United States of America.
Neither Ms. Weise nor Plaintiff Young had committed any objectionable act inside the museum where the speech was to occur, nor had they expressed any opinion whatsoever within that venue. The sole basis for conspicuously removing them from the premises was the bumper sticker that was attached to Ms. Weise’s car, which was parked in a parking lot some distance away, presumably with those of hundreds of other persons.
It is simply astounding that any member of the executive branch could have believed that our Constitution justified this egregious violation of Plaintiffs’ rights. “The right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is ‘the central meaning of the First Amendment’ ” Id. (quoting New York Times v. Sullivan, 376 U.S. 254, 273, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)) (emphasis added).
The district court found that there had been no violation of Plaintiffs’ rights, employing reasoning that is severely misguided and relying on precedents that have no bearing on the questions presented in the instant case. On appeal, the majority opts not to consider whether precious and fundamental constitutional rights were violated, holding only that any violation would not have been necessarily apparent to the Defendants.
I respectfully dissent. I would reach the first issue presented here and would hold that the Plaintiffs’ rights under the First Amendment were clearly violated by the Defendants’ actions in publicly ejecting them from the audience that had gathered to hear the President’s speech on social security. On the second issue, I am unpersuaded by the majority’s analysis and conclusion. I would hold that the rights so violated were clearly established because of the fundamental importance of the right of free speech on topics of public concern and because no reasonable officer could have believed that it was permissible under the Constitution to humiliate these Plaintiffs solely because one of them had legitimately exercised her right of free speech at another time and place.[1]
*1172 Several years ago the Supreme Court held that rights may be clearly established and qualified immunity should be denied “despite notable factual distinctions” from previous cases “so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.” Hope v. Pelzer; 536 U.S. 730, 740, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (quoting United States v. Lanier, 520 U.S. 259, 269, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)). I would hold that this is a case, like Hope v. Pelzer, in which Defendants are not protected by qualified immunity; Defendants violated Plaintiffs’ rights on a pretext so flimsy that the violation was obvious.
II
The allegations of Plaintiffs’ Complaint, which establish the underlying facts at this stage of the litigation, are set out in the majority opinion. That summary is correct as far as it goes.[2] It does not, however, fully reflect the allegations of the Complaint (which, of course, we must take as true at this stage) regarding the manner in which Defendants ejected Plaintiffs from the ' event. The Complaint alleges that Defendant Casper “shouted” to Ms. Weise that she had to leave, and it averred that he “shoved” Mr. Young toward the door. Once outside the event, the Plaintiffs “were confronted by four or five men, two of whom were uniformed police officers .... ” Complaint at 6.
In addition to taking these well-pleaded facts as true, as required, we are to draw from the facts all reasonable inferences in favor of the Plaintiffs. One such inference, clearly supported by these facts, is that being publicly and prominently ejected. from the audience in this manner caused extreme embarrassment and humiliation to the Plaintiffs. Our duty is to determine whether such treatment was justified.
Ill
The majority correctly notes that the Supreme Court has recently rejected the framework for analysis in cases involving the defense of qualified immunity that required lower federal courts to decide first whether a plaintiff has pleaded a violation of constitutional right before deciding whether the right so infringed was clearly established. Pearson v. Callahan, — U.S. -, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (overruling, in part, Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). Nevertheless, the Court, while partially overruling Saucier, was careful to point out that Saucier “was certainly correct in noting that the two-step procedure promotes the development of constitutional precedent and is especially valuable with respect to questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.” Pearson v. Callahan, 129 S.Ct. at 818 (emphasis added).
I am persuaded that this is a case in which the issue of whether a right has been violated should be addressed at the outset. In recent years there have been several cases across the nation in which citizens have sought redress for alleged infringement of their fundamental liberties under somewhat similar circumstances.[3]
*1173 Because the right of free speech on matters of public concern is so vital to our democracy, these are important cases, and the judiciary has a valid and vital role in our society’s response. The importance of the issues raised in this appeal should weigh heavily in favor of our consideration of them on the merits.
Furthermore, in this case the district court was still operating under the rule of Saucier and so analyzed and resolved the constitutional issue. That ruling, although unpublished and not precedential, is a significant one. It is also, in my view, deeply misguided. As a consequence, I conclude that the need to decide the constitutional question is especially pressing here.
Accordingly, I dissent from the majority’s course of forgoing this opportunity to consider an issue of great importance to our country. I would address this issue, and I would decide it in favor of the Plaintiffs.
IV
A
The district court determined that there had been no constitutional violation. The judge reasoned that the focus of the Complaint was that Plaintiffs had not been permitted “to participate in the President’s speech.” (Emphasis in original.) To the contrary, however, the Complaint makes it quite clear that the Plaintiffs here did not wish to participate in the President’s speech but only to attend it. See Complaint at 4, 7. Thus, the district court’s analysis was based on a patently erroneous reading of the Complaint: Plaintiffs’ claim is surely not based on denial of the opportunity to participate in the President’s speech, an opportunity that they never sought nor claimed to have sought.
Relying primarily on Sistrunk v. City of Strongsville, 99 F.3d 194, 196-200 (6th Cir.1996), which he termed “particularly instructive,” the district judge held that the controlling principle is that when the President chooses to speak, he has the right to control his message, including the right to exclude another’s viewpoint: “President Bush had the right, at his own speech, to ensure that only his message was conveyed.” [4]
Not only did the district court base its analysis on an erroneous reading of the Complaint, but its reliance on Sistrunk was misplaced. In Sistrunk, a majority of a divided panel held that a private entity, the Bush-Quayle election committee, could exclude from its private rally a person who was wearing a button expressing support for an opposing candidate. Our case deals with a public event, and Plaintiffs did not attempt to express any opinion in the course of their attendance.[5] These two *1174 very significant differences in the underlying circumstances result in Sistrunk being of very limited relevance to this appeal. Moreover, the unfounded notion of equivalence between mere attendance at a public event and attempting to participate in the message being delivered at the event is very troubling to me, as I shall explain infra.
B
I would hold that Plaintiffs have sufficiently alleged that the Defendants violated Plaintiffs’ rights under the First Amendment by ejecting them from the President’s speech. Plaintiffs aver that Defendants agreed “to expel persons with viewpoints opposed to the President’s.... They also conspired to seize plaintiffs.... ” Complaint at 7.[6] Defendants took this action solely “as a result of the bumper sticker on Ms. Weise’s vehicle.” Id.
The issue thus framed is stark: Defendants excluded Plaintiffs, from the President’s public speech—after they had obtained tickets, cleared security screening and been seated in the audience-—due to the protected expression by one of them outside the event.[7] The question, then, is whether the Constitution permitted Defendants to take this action against Plaintiffs for this reason. The answer, informed by decades of free speech jurisprudence— must be a resounding “no.”
More than 35 years ago, the Supreme Court said:
For at least a quarter-century, this Court has made clear that even though a person has no “right” to a valuable governmental benefit and even thought the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited..... Such interference with constitutional rights is impermissible.
Perry v. Sindermann, 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972) (emphasis added). The Court went on to note that (as of 1972) it had applied this principle to denials of tax exemptions, unemployment benefits and welfare payments, and denial of public employment. Id.
The Court recently reiterated this bedrock and longstanding principle of First Amendment adjudication: “Official reprisal for protected speech ‘offends the Constitution [because] it threatens to inhibit exercise of the protected right,’ and the law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions ... for speaking out.”
*1175 Hartman v. Moore, 547 U.S. 250, 256, 126 S.Ct. 1695, 164 L.Ed.2d 441 (2006) (quoting Crawford-El v. Britton, 523 U.S. 574, 588 n. 10, 592, 118 S.Ct. 1584, 140 L.Ed.2d 759 (1998)). “A more invidious classification than that between persons who support government officials and their policies and those who are critical of them is difficult to imagine.” Glasson v. City of Louisville, 518 F.2d 899, 912 (6th Cir.1975).
Although it is Plaintiffs’ burden of persuasion to show that they have alleged a violation of their rights, it is nevertheless useful to turn the question around: On what basis could a representative of the executive branch have thought, on seeing Plaintiffs alight from Ms. Weise’s car with its bumper sticker, that they could be excluded from a public event solely because Ms. Weise had chosen to exercise her most fundamental First Amendment right outside of the event and in the complete absence of any indication that Plaintiffs intended to even speak at the event, much less any indication of any intent to disrupt the event?
Because the Plaintiffs’ speech was on a matter of great public concern, it was entitled to the utmost in Constitutional protection. Because the prohibition on viewpoint discrimination is so well established, Defendants violated Plaintiffs’ established rights by excluding them from the President’s speech solely on the basis of the protected message of the bumper sticker.
C
Defendants rely heavily on the contention that Plaintiffs’ attendance at the President’s speech would have constituted participation in the speech. Thus, one brief states that “the President has the right to control the message of his own speech, which includes the right to exclude speakers who express disagreement with that message.” Response Brief of Appellee Michael Casper at 4 (emphasis added). The other Defendant’s brief includes the statement that “Plaintiffs have no constitutional right to require the President, at his own speech, to adopt or even allow their dissenting speech .... ” Brief for Appellee Klinkerman at 12 (emphasis added). Clearly this is a red herring. Plaintiffs averred, and again we must accept as fact, that they had no intention to disrupt the speech or even to express themselves at the speech.[8]
Defendants go further in their advocacy of this position. They argue that Plaintiffs’ mere attendance at the President’s speech is somehow equivalent to expression of their opinions at the speech. As noted, the district court accepted this contention. And although the majority does not expressly endorse this view, and indeed seems to reject it expressly at one point, the majority’s reference to Sistrunk as the “most similar case” is a troubling echo of the contention.
Accordingly, I think it important to say, with some emphasis, that I reject this proposition. “Merely being present at a public event does not make one part of the organizer’s message for First Amendment purposes.” Gathright v. City of Portland, 439 F.3d 573, 577 (9th Cir.2006).[9] It sim *1176 ply makes no sense to suppose that the mere presence in the audience of persons who might have some disagreement with the President on some issues would have any effect on the President’s message. Moreover, it is fanciful to suppose that an audience could have been assembled that did not include any persons who disagreed with the President on any issue. And if the violation of these Plaintiffs’ rights was based on an assumption that one who disagrees with the President on one issue is likely to disrupt or embarrass the President when he speaks, that is an assumption that cannot stand in the face of the First Amendment.
As already noted, Defendants persuaded the district court that Sistrunk v. City of Strongsville, 99 F.3d 194 (6th Cir.1996), was “persuasive.” Defendants rely heavily on that case again in this appeal, and the majority here finds it the “most similar” case. Consequently, additional comment on my view of that case seems appropriate.
In Sistrunk, the event in question was deemed by the court to be a private affair, and the opinion is very clear that this was essential to the court’s reasoning. Although the event was to be held on municipal property, the city had granted a permit to the Strongsville Republican Organization for use of the property for a political rally on a certain date for the nominal sum of one dollar. “The permit specifically provided that the use of the facilities and grounds was limited to the members of the organization and their invitees.” 99 F.3d at 196.[10]
The facts in the appeal before us are quite different. The event was not sponsored by a private group but by the Article II executive branch of the United States. Plaintiffs’ Complaint alleges that the event was open to all members of the public who were able to obtain tickets. Tickets were distributed on a first-come-first-served basis, and Plaintiffs obtained their tickets merely by showing identification.
Moreover, the plaintiff in Sistrunk had attempted to attend the Bush-Quayle campaign’s event while wearing a button expressing support for their opponent, so that the assertion that the plaintiff was attempting to participate in the rally by expressing her own message had at least some factual basis in that case.[11] The district court apparently found these distinctions unimportant, but I conclude that they are of considerable significance in the constitutional analysis and effectively undercut the district court’s entire rationale.
D
In this appeal, the majority goes awry in another way. Plaintiffs have clearly based their claim on the protected speech that was on the bumper sticker. Yet the ma *1177 jority notes, apparently as a factor that somehow weighs against the Plaintiffs, that no authority is cited to suggest that attendance “is transformed into speech or even expressive activity” because of Maj. op. at 1169. No authority is given for that suggestion, I venture to say, because that is not the Plaintiffs’ theory of their case.[12]
The majority, however, seems to find this notion significant, as the opinion goes on to say that the cases relied on by Plaintiffs all concern “speech that is protected for some reason.” Maj. op. at 1169. The implication seems to be that this case is only about Plaintiffs’ attempted attendance at the President’s speech, which the majority does not find to be protected. But that is not the ease that has been brought before us. Instead, the Plaintiffs have been quite clear in basing their cause of action on the exercise of First Amendment rights embodied in Ms. Weise’s bumper sticker.
Thus, we address here speech that is unquestionably protected, or more accurately, entitled to be protected under the First Amendment. It is severely distressing that such protection is not forthcoming from this court.
y
I would also hold that the rights which were violated by the Defendants were so well established that a reasonable officer should have known that this conduct was unlawful. For a court to find that a constitutional right was clearly established, “its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right..... [I]n the light of pre-existing law[,] the unlawfulness must be apparent.” Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal citations and quotation marks omitted).
It is not necessary for Plaintiffs to identify a precedent involving the same factual situation:
[Gjeneral statements of the law are not inherently incapable of giving fair and clear warning, and ... a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful.
Id. at 741, 122 S.Ct. 2508 (emphasis added; internal quotations and citations omitted). Thus, “officials can still be on notice that their conduct violates established law even in novel factual circumstances.” Id.
The prohibition against viewpoint discrimination is unquestionably well established. A particularly articulate expression of the rule is that
there are some purported interests— such as a desire to suppress support for a minority party or an unpopular cause, or to exclude the expression of certain points of view from the marketplace of ideas—that are so plainly illegitimate [that they cannot be tolerated]. The general principle that has emerged from this line of cases is that the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others.
Members of City Council of City of Los Angeles v. Taxpayers for Vincent, 466 U.S. 789, 804, 104 S.Ct. 2118, 80 L.Ed.2d 772 (1984).
*1178 It has been similarly well established for years that taking action against a person for exercise of the protected rights is prohibited in most circumstances. Considering action taken against a deputy sheriff that, for purposes of summary judgment, was assumed to have been based on his exercise of protected speech about the political philosophy of an incumbent and a potential challenger, we held that the law had been well established in January 1998 that freedom of expression includes the freedom to opine on issues of public concern. “Consequently, a reasonable official would understand that removing [the deputy’s] commission based on his expressed preference for one individual’s philosophy over another ... violated [the deputy’s] free speech rights.” Bass v. Richards, 308 F.3d 1081, 1090 (10th Cir.2002).
The only question, then, is whether there is something in the factual context in which the issue arises in the instant appeal that would raise doubt about the application of the prohibition on viewpoint discrimination. I firmly believe that there is no such uncertainty. The Plaintiffs (or one of them) engaged in protected speech. Quite separate from that, in time and location, they were admitted to the audience for a Presidential address, having satisfied all conditions for admission. Based only on a demonstration of protected speech on the bumper sticker of the car that Plaintiffs had parked some distance away from the speech, representatives of the Executive publicly ostracized and humiliated the Plaintiffs.
I see no basis whatsoever for any doubt about the impropriety of this conduct. Instead, I would firmly hold that the right of freedom of speech and the prohibition on taking adverse actions against a speaker based solely on her point of view “apply with obvious clarity”[13] to the facts of this case. }{5 ífí Jji % %
Accordingly, I respectfully dissent.

. Defendants do not dispute that the bumper sticker on Plaintiff Weise’s car critical of war policy is protected speech. The majority recognizes that the "speech at issue” here is the bumper sticker, maj. op. at 1168, and yet, listing but not discussing cases relied on by Plaintiffs, the majority says that these cases have in common "speech that is protected for some reason,” id. at 1169. This seems to imply that Ms. Weise's speech was not protected, but I cannot believe that the majority truly intends this implication.

. The majority opinion does, however, insert in its analysis section one “fact” that is outside the pleading, declaring that the museum at which the President spoke was private property. Although this may (or may not) be correct, it is outside the record in this appeal, as far as I can determine.

. See, e.g., McCabe v. Macaulay, 551 F.Supp.2d 771 (N.D.Iowa 2007) (rally for incumbent President at a public park; protes *1173 tors arrested on public property while trying to comply with law enforcement orders; persons in the same area demonstrating views favorable to the President were not confronted); Rank v. Hamm, 2007 WL 894565 (S.D.W.Va. Mar 21, 2007) (Presidential address on July 4 on the grounds of the state Capitol; plaintiffs arrested for wearing shirts with messages critical of the President). Other cases and incidents are cited in the briefs herein and in various legal journals. See, e.g., Kimberly Albrecht-Taylor, Note, Giving Dissenters Back Their Rights: How the White House Presidential Advance Manual Changes the First Amendment and Standing Debates, 17 Wm. & Mary Bill Rts. J. 539 (2008).

. In discussing Sistrunk, the district court noted that case had relied on Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). Besides those two cases, the only one cited in his brief discussion of the issue was Wells v. City and County of Denver, 257 F.3d 1132, 1143 (10th Cir.2001).

. Indeed, this case is almost a polar opposite of Sistrunk with regard to the Plaintiffs' behavior. Their only expression of opinion was *1174 on the bumper sticker, about as far removed from trying to express themselves at the event as can be.

. Plaintiffs pleaded a violation of their rights under the First and Fourth Amendments, but on appeal argue only that their First Amendment free speech rights were violated.

. The majority appears to place some importance on the facts that "Defendants did not suppress Plaintiffs' bumper sticker speech nor did the government prosecute Plaintiffs for the speech.” Maj. op. at 1168. Of course the suggestion that the government could have done either is far outside the pale. More importantly, the significant fact is that the Defendants did assault, embarrass and publicly humiliate the Plaintiffs in response to this protected conduct by one of them.

. Appellant Young intended to attempt to be recognized to ask a question if the President, in his sole discretion, opted to take questions from the audience. Because that intention was unknown to the Defendants, they have not suggested that their actions were motivated by this possibility which, in any event, was something which would not have occurred unless the President decided to open the floor to questions.

. The Ninth Circuit was quoting, with approval, the opinion of the district judge in the case it was reviewing. Gathright v. City of Port *1176 land, 315 F.Supp.2d 1099, 1103 (D.Or.2004). The same language was quoted with approval in Wickersham v. City of Columbia, 371 F.Supp.2d 1061, 1084 (W.D.Mo.2005), aff'd, 481 F.3d 591 (8th Cir.2007).

. The dissenting judge in Sistrunk was not convinced that a traditional public forum had been transformed into a private forum through the use of a permit. 99 F.3d at 202-203 (Spiegel, D.J., dissenting).

. The dissenter, however, was not persuaded, rejecting the majority’s conclusion that "being a member of the rally’s audience” was like marching in the parade, the expressed wish of the plaintiff in Hurley v. Irish-American Gay, Lesbian & Bisexual Group of Boston, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995). The dissent said that one who marches in a parade "is an active participant ... while one in attendance at a political rally is merely a spectator. In actuality, marching in a parade is equivalent to speaking at a rally since both are involved in conveying the message.” Sistrunk, 99 F.3dat201 (Spiegel, D.J., dissenting).

. Indeed, in the same paragraph, the majority recognizes that "the speech at issue [is] the bumper sticker on Ms. Weise’s car.”

. Hope v. Pelzer, 536 U.S. at 741, 122 S.Ct. 2508.