John Franklin GOOD, Plaintiff,

v.

The BOARD OF COUNTY COMMIS-
SIONERS OF the COUNTY OF
SHAWNEE, KANSAS, et al., Defen-
dants.

No. 01–4067–RDR.

United States District Court,
D. Kansas.

May 19, 2004.

Leonard M. Robinson, Topeka, KS, for Plaintiff.

David P. Mudrick, Thomas E. Wright, Wright, Henson, Clark & Baker LLP, Donald Patterson, J. Steven Pigg, Fisher, Patterson, Sayler & Smith, J. Roger Hendrix, Mark L. Bennett, Jr., Bennett & Hendrix, LLP, Topeka, KS, Chanda M. Feldkamp, Fisher, Patterson, Sayler & Smith, LLP, Overland Park, KS, for Defendants.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Plaintiff, a former deputy sheriff with the Shawnee County Sheriff's Department, brings this action against a number of defendants pursuant to 42 U.S.C. § 1983. Plaintiff's claims arise out of his termination from employment as a deputy sheriff and his criminal prosecution for perjury. The defendants are the Board of County Commissioners of Shawnee County, Kansas; Richard Barta, Shawnee County Sheriff; Joan M. Hamilton, former Shawnee County District Attorney; Joel W. Meinecke, Shawnee County Assistant District Attorney; Tony W. Rues, Shawnee County Assistant District Attorney; and Jack Metz, Daniel Jaramillo, Scott Holladay and Phillip Blume, former and present Shawnee County deputy sheriffs.[1]

Plaintiff contends that his First and Fourteenth Amendment rights have been violated by the defendants. He also asserts supplemental claims of malicious prosecution and abuse of process.[2] This matter is presently before the court upon motions for summary judgment filed by the following defendants: (1) the Board of County Commissioners and Barta; (2) Hamilton, Meinecke and Rues (the prosecutor defendants); and (3) Metz, Jaramillo, Holladay and Blume (the deputy sheriff defendants).[3]

I.

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.*

1. The court previously granted summary judgment to another defendant, Diane Gordy, on April 17, 2002. The following defendants have been dismissed with prejudice during the course of these proceedings upon a stipulation of the parties: Michael J. Meier, former Shawnee County Commissioner; Theodore D. Ensley, Shawnee County Commissioner; Marice Kane, Shawnee County Commissioner; Richard Eckert, Shawnee County Counselor; and James Joseph Welch, State of Kansas Assistant Attorney General.

2. Plaintiff had also asserted a claim of intentional infliction of emotional distress or outrage, but he has abandoned that claim.

3. Plaintiff filed several motions for extensions of time to respond to these motions for summary judgment. The court has not ruled on those motions. At this time, the court shall grant them and find that all of the responses filed by the plaintiff were timely.

An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.*

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671.

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see *Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

## II.

Many of the facts that form the background of this case are not in dispute.[4]

4. Plaintiff has filed a motion to strike portions of the summary judgment motions submitted by the defendants. He contends that some of the factual statements of the defendants are based upon hearsay. He further argues that the use of this evidence violates his rights under the Confrontation Clause of the Sixth Amendment to the United States Constitution. Specifically, he points to testimony from the *State v. Hernandez* proceedings. He asserts that this testimony should be excluded because it is hearsay and its use violates his Confrontation Clause rights. Concerning his Confrontation Clause argument, he notes that he was not a party to those proceedings and he had no opportunity to cross-examine any of the witnesses.

The defendants counter that the testimony from the Hernandez proceedings is not hearsay and does not violate the Confrontation Clause. The defendants point out that it is not hearsay because it is not offered for the truth of the matter asserted. They argue that it does not violate the Confrontation Clause because the constitutional right to confront witnesses applies only in criminal prosecutions.

The court agrees with the arguments raised by the defendants. The testimony from the Hernandez proceedings is not offered for the truth of the matter asserted, but rather to show the state of mind of the prosecutors and the existence of probable cause for plaintiff's arrest and his subsequent prosecution. See *Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir.2000), cert. denied, 534 U.S. 955, 122 S.Ct. 354, 151 L.Ed.2d 268 (2001); *United States v. Becker*, 230 F.3d 1224, 1236 (10th Cir.2000), cert. denied, 532 U.S. 1000, 121 S.Ct. 1666, 149 L.Ed.2d 647 (2001); *United States v. Nieto*, 60 F.3d 1464, 1468 (10th Cir.1995), cert. denied, 516 U.S. 1081, 116 S.Ct. 793, 133 L.Ed.2d 742 (1996); *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir.1987); *United States v. Rodriguez–Pando*, 841 F.2d 1014, 1020 (10th Cir.1988). In addition, the Confrontation Clause is not violated because it applies only to criminal prosecutions and not to civil proceedings such as this case, *United States v. Real Property Located at Route 1, Box 118, Washita County, OK*, 132 F.3d 44, 1997 WL 796489 at * 1 (10th Cir.1997) (table); and does not preclude statements offered for a limited purpose and not for the truth of the matter asserted. *Thomas v. Hubbard*, 273 F.3d 1164, 1172 (9th Cir.2001), overruled on other grounds, *Payton v. Woodford*, 299 F.3d 815, 829 n. 11 (9th Cir.2002)(en banc); *United States v. Wilson*, 107 F.3d 774, 781 (10th Cir.1997). In sum, plaintiff's motions to strike portions of the defendants' motions for summary judgment shall be denied.

The following facts are undisputed. The court will address those facts that are in dispute as we discuss the arguments raised in the motions for summary judgment.

Plaintiff was hired as a patrolman by the Shawnee County Sheriff's Department in 1984. In 1987, Timothy Oblander began working at the Sheriff's Department. Plaintiff and Oblander became partners in 1988.

Metz, Holladay, Blume and Jaramillo were hired by the Sheriff's Department at various times in the 1980's. Plaintiff worked with Metz and Jaramillo on several occasions. He did not work closely with Holladay or Blume. He never had any problems with any of them while he was employed at the Sheriff's Department. Dave Meneley was elected Shawnee County Sheriff in November 1992 and took office in January 1993.

In January 1993, Oblander was assigned to the Special Services Unit/Narcotics Division. This unit dealt with narcotics, prostitution, burglary and any other crime not assigned to a specialized division. Sometime in late 1993 to early 1994, Oblander began using cocaine he had stolen from the sample drug packets he was given to train drug dogs. In July 1994, four packets of cocaine evidence were discovered missing from the evidence confiscated in the *State v. Caldwell* case. Oblander later confessed to stealing that drug evidence from Holladay's office before the evidence had been transferred to the evidence room. Spurred by the missing Caldwell drugs, the Sheriff's Department initiated its first internal investigation into the missing drugs. Holladay was asked to take a polygraph examination as part of this investigation. He took an examination and passed it. On August 16, 1994, the internal investigation was closed with no conclusive results.

In November 1994, plaintiff joined Oblander in the Special Services Unit/Narcot- ics Division. They became partners at that time. In late 1994 to early 1995, Oblander began stealing drug evidence from those drug buys he and plaintiff had made in the undercover drug unit. Eventually, Oblander asked Good to take him to Valley Hope, a drug and alcohol treatment facility in Atchison, Kansas. Plaintiff did so and Oblander was admitted for treatment on June 27, 1995. Following Oblander's admission to Valley Hope, plaintiff stopped by the offices of Dr. Douglas Iliff, Oblander's primary care physician, to obtain Dr. Iliff's authorization for admittance to Valley Hope to satisfy insurance requirements. According to the medical records from Dr. Iliff's office, plaintiff spoke with Dr. Iliff's nurse, Diane Gordy. The notes indicate that plaintiff told Gordy that he had no idea Oblander was addicted to crack cocaine until he came into the office and found Oblander using crack cocaine that had been seized as evidence. Hamilton did not discover these records until July 2000, after plaintiff's first prosecution for perjury.

The medical records from Valley Hope show that Oblander was admitted for cocaine dependence. The records reflect that he "steals [his drugs] out of what they take as police." The records further reflect that Oblander stated that he felt that "he feels like he lost control of his cocaine use about 2 weeks [prior to admission] when everyone found out." The day after he was admitted, he told a counselor that "[h]e came to Valley Hope after informing his wife and his partner of his addiction." The records further show that he admitted having a cocaine abuse problem, but did not feel that he had an alcohol problem.

In 1995, a criminal defendant in state court, Carlos Hernandez, filed a motion to set aside his conviction based upon tampered evidence because Oblander had been the deputy sheriff assigned to his case. Judge Eric Rosen of the Shawnee County

District Court handled the motion in Hernandez. During the course of the Hernandez proceedings, defendants Holladay and Metz testified that plaintiff had informed them that he knew Oblander had been using drugs while working as his partner. Moreover, Holladay and Metz testified that plaintiff told them that Oblander was in a drug treatment facility for cocaine addiction and that Oblander was stealing cocaine from seized evidence to support his habit. Plaintiff also testified during the Hernandez proceeding. He denied knowing about Oblander's drug addiction and denied making any statements to defendants Holladay and Metz that he knew of Oblander's addiction and use of seized evidence.

During the Hernandez proceedings, Judge Rosen requested that the parties involved take polygraph examinations. Holladay, Metz, Blume and Jaramillo agreed to take polygraphs while Good, Oblander and Meneley refused. The polygraph examinations were conducted in March 1999. The examinations indicated that Holladay, Metz, Blume and Jaramillo were truthful.[5] Soon thereafter, Assistant Attorney General James Welch told the Shawnee County District Attorney's Office that plaintiff had discussed Oblander's cocaine use with him in 1995.

On April 2, 1999, defendant Hamilton filed six charges of perjury and one count of official misconduct against Oblander. On April 20, 1999, defendant Hamilton filed a two-count perjury complaint against plaintiff based upon his testimony in the Hernandez hearing. A preliminary hearing was conducted and Judge Charles Andrews found probable cause to believe that plaintiff had committed the crimes with which he was charged, and bound him over for trial. On May 10, 1999, Pedro Irigonegaray and Robert Eye entered their appearances in the plaintiff's perjury case as counsel for Holladay, Blume and Jaramillo pursuant to K.S.A. 19–717.[6]

---

**5.** Plaintiff argues that any reference to the polygraph examinations should not be considered because polygraph evidence is inadmissible in federal court. We must disagree. Plaintiff is correct that in the past results of polygraph examinations were inadmissible to bolster or undermine credibility. However, this ruling may be changing after the Supreme Court's decision in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 588–89, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). See, e.g., *United States v. Crumby,* 895 F.Supp. 1354, 1358–63 (D.Ariz.1995) (polygraph evidence admissible because sufficiently reliable given narrow purposes); *United States v. Galbreth,* 908 F.Supp. 877, 878–95 (D.N.M.1995)(polygraph evidence admissible because reliable). Nevertheless, we need not consider the admissibility of the polygraph examinations for that purpose because here the polygraph examination evidence is not being offered and considered for the truth of its findings. Rather, the evidence is being considered for the purpose of determining if the prosecutors had probable cause to bring the perjury charges against plaintiff. Such use of the polygraph examinations is proper.

*Kerr v. Lyford,* 171 F.3d 330, 341 (5th Cir. 1999) (relying on polygraph evidence in determining that probable cause existed); *Craig v. Singletary,* 127 F.3d 1030, 1046 (11th Cir. 1997) (indications of deception from polygraph may be one factor considered in probable cause analysis), cert. denied, 523 U.S. 1031, 118 S.Ct. 1323, 140 L.Ed.2d 486 (1998); *Booker v. Ward,* 94 F.3d 1052, 1058 (7th Cir.1996) (relying on polygraph results as one factor in finding that Illinois police officers had probable cause for arrest as a matter of law), cert. denied, 519 U.S. 1113, 117 S.Ct. 952, 136 L.Ed.2d 840 (1997); *Bennett v. City of Grand Prairie, Texas,* 883 F.2d 400, 405–06 (5th Cir.1989) (polygraph results, in conjunction with other evidence, may be used in determining whether probable cause exists to issue warrant). In sum, the court finds that the use of the polygraph examinations for the purpose of determining whether probable cause existed for the perjury prosecutions of the plaintiff is appropriate.

**6.** K.S.A. 19–717 provides as follows:

That the prosecuting witness in any criminal action or proceeding may, at his own ex-

On May 11, 1999, Judge Rosen found in the Hernandez proceeding that plaintiff knew of Oblander's behavior and "was an enabler in Oblander's procuring of drugs and in hiding this activity." Judge Rosen also found that plaintiff "not only had knowledge of Deputy Oblander's conduct, but actively participated in concealing" it.

On May 24, 1999, the Kansas Attorney General's Office filed a petition seeking Meneley's ouster. The Attorney General's Office sought to oust Meneley based upon the following allegations: (1) he had willfully concealed evidence of a crime; (2) he had willfully provided false testimony under oath on April 11, 1996 during an Attorney General inquisition and on February 22 and March 9, 1999 during the hearings in Hernandez; (3) he had knowingly permitted criminal investigation cases to be forwarded to prosecution and conviction without revealing that the evidence in the cases had been compromised; (4) he had willfully failed to adequately investigate missing drug evidence; and (5) he had willfully failed to preserve the integrity of evidence collected by members of his department to ensure a fair prosecutorial system.

On November 22, 1999, Oblander, in the presence of his attorney, gave a sworn statement to the District Attorney's office as part of a diversion agreement. In the sworn statement, Oblander stated that he called plaintiff on June 26, 1995, after he had used cocaine and told plaintiff that he had been using drugs. He further stated that he had no doubt that plaintiff knew he was in treatment at Valley Hope for cocaine addiction. On November 23, 1999, Oblander returned to the District Attor-

ney's office to add to his statement. At that time, he admitted that he had stolen cocaine evidence from the Caldwell case.

Oblander's diversion agreement provided that the State of Kansas would dismiss the pending charges against him and recommend that the United States Attorney's Office not file any federal charges based upon his violations. The agreement further provided that the defendant would do community service, would never seek another position in law enforcement, and would testify truthfully against Good and Meneley in their criminal trials. On December 10, 1999, the diversion agreement was approved in state court by Judge Franklin Theis.

On December 28, 1999, Irigonegaray and Eye were allowed to withdraw as counsel for Holladay, Jaramillo and Blume in plaintiff's perjury case. Counsel had represented to the court that "their role as assisting counsel pursuant to K.S.A. 19–717 has been fulfilled." They further indicated that plaintiff's case was being "vigorously prosecuted" by the Shawnee County District Attorney. They asserted that "recent admissions by former Deputy Oblander in his diversion process, and his agreement to testify in this case, have substantially validated the positions of these witnesses and removed the necessity of independent counsel to safeguard their rights." During the course of their representation of Holladay, Jaramillo and Blume, defendant Hamilton was in control of the prosecution.

Meneley was removed from office as sheriff pursuant to the ouster proceeding

pense, employ an attorney or attorneys to assist the county attorney to perform his duties in any criminal action or proceeding under any of the laws of the state of Kansas, and such attorney or attorneys shall be recognized by the county attorney and court as associate counsel in such action or proceed-

ing, and no prosecution shall be dismissed over the objection of such associate counsel until the reason of the county attorney for such dismissal, together with the objections thereto of such associate counsel, shall have been filed in writing, argued by counsel, and fully considered by the court.

on February 24, 2000. On March 21, 2000, defendant Barta was sworn in as the new Shawnee County Sheriff.

On April 20, 2000, plaintiff was terminated from his position with the Sheriff's Department. The reasons given for plaintiff's termination were perjury, impeding an investigation, and conduct unbecoming an officer.

The trial of plaintiff's perjury case began on June 6, 2000. Holladay, Metz, Welch and Oblander, among others, testified against plaintiff. The testimony of Holladay and Metz at trial was consistent with their previous testimony at the Hernandez hearings and plaintiff's preliminary hearing. On June 13, 2000, a jury acquitted plaintiff of the perjury charges.

Following the termination of plaintiff, Shawnee County sought to deny unemployment benefits to plaintiff. Two hearings were held on this issue in July and August 2000. Plaintiff ultimately received unemployment benefits. Plaintiff also appealed his termination through grievance procedures.

On August 31, 2000, Hamilton filed another two-count perjury complaint against plaintiff. These charges arose from plaintiff's testimony at his first perjury trial. Hamilton indicated in the affidavit attached to the complaint that she had discovered new evidence that was contained in Oblander's medical records. The medical records were alleged to contain notes that indicated that plaintiff had assisted Oblander in getting the initial referral to the drug treatment facility for cocaine addiction based upon his knowledge that Oblander had been using case evidence to support his habit. The second perjury complaint was subsequently dismissed by Judge Daniel Mitchell on December 21, 2000 on collateral estoppel grounds.

Plaintiff's appeal of his termination proceeded to arbitration. An arbitration hearing was held on March 2, 2001. In June 2001, the arbitrator awarded plaintiff fourteen months back pay, but upheld the termination. He determined that plaintiff "could not and would not be able to function as an employee of the Sheriff's Department."

### III.

Plaintiff contends that his right to association guaranteed by the First Amendment was violated by the actions of the defendants. He asserts specifically that certain actions of the defendants were taken because of his "perceived association with Dave Meneley and his association with Dave Meneley." He has alleged that the defendants "perceived" that he was "a political ally as well as friend of the former Sheriff Dave Meneley." He suggests that the following actions were taken because of this perception: (1) the decision to terminate him by the Board of County Commissioners and Barta; (2) the decision by Metz, Holladay and Welch to give false testimony against him; (3) the decision by Metz, Jaramillo, Holladay and Blume to hire a special prosecutor to assist in prosecuting the criminal cases against him; (4) the decision of Hamilton, Meinecke and Ruez to obtain false statements from witnesses and to act as investigators in the criminal cases against him; and (5) the decision of Hamilton and Meinecke to act as complaining witnesses against him.

The aforementioned claims of plaintiff are taken from the pretrial order that has been entered in this case. Prior to the entry of the pretrial order, plaintiff's claims lacked specificity and certainty. Even in the pretrial order, the claims are somewhat nebulous. The court has made every effort to state them in a liberal fashion, giving plaintiff the benefit of all doubts.

The defendants have initially suggested that plaintiff's claim that actions were tak-

en against him by them because he was perceived to be a friend of Meneley does not constitute a violation of the First Amendment. They point out that his "right to associate" with Meneley is not violated if the actions were taken only because he was a friend of Meneley. Plaintiff does not dispute this point. Rather, plaintiff suggests that the actions were taken because the defendants perceived that he was a "political ally" of Meneley. The defendants have responded that (1) this claim should not be considered because plaintiff has never raised it; (2) plaintiff's claim fails as a matter of law because the First Amendment right to association does not protect conduct "perceived" by a defendant where the employee did not engage in that conduct; and (3) even if plaintiff has stated a right of association claim, they are entitled to summary judgment on this claim because there is no evidence to support it. The individual defendants also contend that they are entitled to summary judgment on this claim based upon qualified immunity. Finally, the Shawnee County Board of Commissioners asserts that it is entitled to summary judgment for the additional reason that plaintiff has failed to establish the requirements for entity liability under § 1983.

The court has some concerns about the timeliness of the instant claim. The claim that plaintiff now asserts was not a part of the original complaint. The pretrial order, however, does contain the claim. The court notes no objection to this claim in the pretrial order by the defendants. Accordingly, the court will proceed to consider it.

This instant claim is, without question, a puzzling contention when the undisputed facts are considered. Plaintiff has conceded the following facts: (1) he did not socialize with Meneley while he worked for the Sheriff's Department; (2) he had no

association with Meneley while Meneley was Sheriff other than as an employee; (3) he was vocal about actions taken by Meneley in the Sheriff's Department that he did not like; (4) he was in Meneley's "dog-house" at one time; and (5) he did not become a friend of Meneley until May 2002. On the political front, plaintiff was a Democrat for much of the period at issue while Meneley was a Republican. Plaintiff supported Meneley's opponents in the elections that took place during the time period at issue, and he was not secretive about it. His first political activity for Meneley occurred following his termination, about two months prior to the August 2000 primary when he put up a few signs. Even then, he did not sign ads for Meneley or speak out for him, except to tell his mother he supported Meneley.

Plaintiff is able to point only to the following matters as support for this contention of the defendants' perceived political association with Meneley: (1) he was "hand-picked" by Meneley for a position in the Special Services/Narcotics Unit; and (2) Jaramillo attributed problems in the Special Services/Narcotics Unit to Meneley and members of the unit. He also notes, by relying on various newspaper articles, that six officers, including supervisors, associated with the Special Services/Narcotics Unit resigned or were terminated. Plaintiff sums up his argument as follows: "It is entirely likely [he] was subject to adverse employment action because of his membership in the Special Services/Narcotics Unit and its overall perception as being staffed by Meneley's hand-picked officers."

 "The First Amendment protects public employees from discrimination based upon their political beliefs, affiliations, or non-affiliation unless their work requires political allegiance." *Mason v. Oklahoma Turnpike Auth.*, 115 F.3d 1442,

1451 (10th Cir.1997) (citing *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 68–9, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990) and *Branti v. Finkel,* 445 U.S. 507, 513, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)). An employee can establish a violation of his association rights if he demonstrates that (1) political affiliation and/or beliefs were substantial or motivating factors behind his dismissal; and (2) his position did not require political allegiance. *Bass v. Richards,* 308 F.3d 1081, 1090 (10th Cir.2002).

The court must first consider whether plaintiff's right of association claim based upon the perception of the defendants constitutes a claim cognizable under the First Amendment. A First Amendment association claim requires an association protected by the Constitution. *Correa–Martinez v. Arrillaga–Belendez,* 903 F.2d 49, 57 (1st Cir.1990) ("[T]he first amendment does not protect against all deprivations arising out of an act of association unless the act itself—say, joining a church or a political party, speaking out on matters of public interest, advocacy or reform—falls within the scope of activities eligible for inclusion within the constitutional tent."). In other words, plaintiff must assert that adverse employment actions were taken against him because he engaged in conduct protected by the First Amendment. See *Bass,* 308 F.3d at 1091 (sheriff not entitled to qualified immunity on First Amendment association claim where reserve deputy alleged he was stripped of reserve commission for supporting sheriff's opponent in election); *Jantzen v. Hawkins,* 188 F.3d 1247, 1252–53 (10th Cir.1999) (sheriff not entitled to summary judgment where deputy sheriffs and jailer asserted they were terminated after supporting candidate who opposed sheriff). Here, plaintiff has not done so. He has merely asserted that adverse actions were taken against him because the defendants perceived that he was engaged in protected First Amendment activity.

He has made no claim that the defendants discriminated against him on the basis of actual loyalty to a political party, political candidate or advocacy of ideas. Thus, in this case, the absence of any allegation that plaintiff was deprived of any association protected by the First Amendment is fatal to his claim. *Ambrose v. Township of Robinson,* 303 F.3d 488, 495–96 (3rd Cir. 2002) (rejecting liability on basis that conduct protected by the First Amendment was "perceived" by the employer when employee did not engage in that conduct); *Wasson v. Sonoma County Junior College,* 203 F.3d 659, 663 (9th Cir.) (no First Amendment claim when public employee is falsely accused of making statements uttered by someone else), cert. denied, 531 U.S. 927, 121 S.Ct. 305, 148 L.Ed.2d 245 (2000); see also *Waters v. Churchill,* 511 U.S. 661, 679, 114 S.Ct. 1878, 128 L.Ed.2d 686 (1994)("We have never held that it is a violation of the Constitution for a government employer to discharge an employee based on substantively incorrect information.").

The court's conclusion on this issue is supported by a recent decision of another judge in this district in a case arising from the same circumstances as the instant one. In *Busey v. Board of County Commissioners of Shawnee County,* 277 F.Supp.2d 1095 (D.Kan.2003), Judge Robinson considered claims from a deputy sheriff who had been a member of the special services/narcotics unit and was forced into retirement after Sheriff Barta was appointed to replace Sheriff Meneley. Plaintiff raised a similar First Amendment association claim, contending that he was terminated because the defendants had mistakenly "identified and perceived [him] as a person with political loyalty to Meneley." Plaintiff had alleged no political act of association with Meneley. He had also not alleged that his politics, his ideology, or his advocacy of political goals led to his alleg-

edly forced retirement. Given these circumstances, the court granted summary judgment to the defendants on the plaintiff's First Amendment association claim. *Busey*, 277 F.Supp.2d at 1110. Judge Robinson made the following analysis:

> The record does not say that Busey expressed, or possessed, any political views; indeed, Busey's testimony indicates that he avoided political involvement with Meneley at all. There was nothing inherently political about Busey's relationship with the former sheriff. The record contains no facts regarding the political contours, if any, of Busey's relationship with Meneley. There was no campaign and no election, nor was there evidence that Busey was aware that Meneley would run against Barta for sheriff later that year.
>
> Busey makes the bald assertion, without support in the record, that the ouster of Meneley for criminal wrongdoing was politically motivated. However, such a "politically charged atmosphere," without more, does not provide a reasonable inference that defendants' employment decisions about Busey were tainted by their disregard of his first amendment rights. "Merely juxtaposing a protected characteristic—someone else's politics—with the fact that plaintiff was treated unfairly is not enough to state a constitutional claim." In order to survive summary judgment, Busey must make a showing that a causal connection exists linking defendants' adverse employment decision to Busey's politics—that is, Busey must demonstrate that he was subjected to discrimination based on his political loyalty, affiliation or views. Merely alleging that he had an unde-

fined association with a politically controversial third party falls short of this requirement.

*Id.* (citations omitted).

■] Even if the court found that plaintiff had stated a First Amendment right to associate claim based upon the defendants' perceptions, we do not find any evidence in the record to support the factual claim that the defendants had those perceptions. The court has scoured the record and we find nothing to support plaintiff's theory concerning any of the defendants. There is no evidence that the plaintiff was ever a political ally of Meneley prior to any of the actions noted by plaintiff. Moreover, there is a complete absence of evidence to demonstrate that there could have been a perception that he was a political ally of Meneley. The evidence noted by the plaintiff, i.e., that he was hand-picked to serve on the special narcotics unit and that problems in the unit were attributed to Meneley and its members [7], certainly does not provide any basis for the alleged perception. Plaintiff has done nothing more than posit a possibility. This suggestion, without anything to support it, cannot survive summary judgment.

■ Finally, the numerical argument offered by plaintiff lacks any legal or factual support. Plaintiff relies upon *Jefferies v. Wyandotte County Board of County Commissioners*, 979 F.Supp. 1372, 1379 (D.Kan.1997) for support of this contention. The court finds that Jefferies provides no support legally for this case. The circumstances in Jefferies were much different than those that exist here. Moreover, there is a complete lack of proof by plaintiff on this issue. In order to support

---

7. The court does not even find that the purported evidence supports the position taken by the plaintiff. For example, he argues that the interview report with Jaramillo indicates that Jaramillo determined that the problems in the special narcotics unit were attributable to Meneley and the members of the unit. The report contains no such statements. In the report, Jaramillo states that when Jaramillo "returned to the sheriff's department, he found what he believed to be problems in the Unit."

this argument, plaintiff relies solely upon information contained in newspaper articles. Plaintiff offers these articles to prove the information contained in them. As a result, they are hearsay and may not be considered on a motion for summary judgment. *Chicago Firefighters Local 2 v. City of Chicago,* 249 F.3d 649, 654 (7th Cir.) (newspaper articles are inadmissible hearsay when offered for truth of matters contained in them), cert. denied, 534 U.S. 995, 122 S.Ct. 465, 151 L.Ed.2d 381 (2001); see also *Gross v. Burggraf Construction Co.,* 53 F.3d 1531, 1541 (10th Cir.1995) (hearsay evidence cannot be considered on a motion for summary judgment).

 Moreover, even if there were some factual or legal support for the theory asserted by the plaintiff, the court would find that the individual defendants are entitled to qualified immunity. Under the doctrine of qualified immunity, a government actor is not subject to liability unless it is "sufficiently clear that a reasonable official would have understood that his conduct violated the right." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir.), cert. denied, 534 U.S. 1019, 122 S.Ct. 543, 151 L.Ed.2d 421 (2001); see also *Lybrook v. Members of the Farmington Municipal Schools Board of Education,* 232 F.3d 1334, 1337 (10th Cir.2000); *Liebson v. New Mexico Corrections Dept.,* 73 F.3d 274, 276 (10th Cir.1996). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Currier,* 242 F.3d at 923 (citing *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir.1992)).

Here, we could not find that a reasonable government actor would know that the First Amendment right to association extends to "perceived" association. No Supreme Court or Tenth Circuit decision

has so held. Nor have we found any other circuit court case that provides any support. In sum, the court believes that the individual defendants are also entitled to qualified immunity.

 Having found that summary judgment is appropriate on the plaintiff's federal claims under § 1983, the Court must determine whether it should exercise continuing jurisdiction over plaintiff's remaining state law claims for malicious prosecution and abuse of process. The court is authorized to decline supplemental jurisdiction upon the dismissal of all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). The exercise of supplemental jurisdiction is committed to the court's sound discretion. *City of Chicago v. International College of Surgeons,* 522 U.S. 156, 172–73, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997). "[W]hen deciding whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness and comity.'" *Id.* at 173, 118 S.Ct. 523 (quoting *Carnegie–Mellon University v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)).

The court believes that the factors of judicial economy and convenience would be enhanced by proceeding to consider the state law claims raised by plaintiff. The issues concerning these claims have been exhaustively briefed and the court has a thorough understanding of the facts and the law concerning these claims. Accordingly, the court shall exercise its discretion and review the state law claims and the arguments raised by the parties concerning them.

## IV.

### A. Malicious Prosecution

Plaintiff has asserted a malicious prosecution claim against Hamilton, Meinecke,

Rues, Metz, Holladay, Blume and Jaramillo. The malicious prosecution claim arises from the perjury charges that were brought against plaintiff. He contends that the defendants brought these charges against him without probable cause and with malice and that they were terminated in his favor.

Hamilton, Meinecke and Rues raise two arguments. First, they contend that the court has previously dismissed the malicious prosecution claims against them. Second, they assert they are entitled to summary judgment on these claims because plaintiff has failed to demonstrate a lack of probable cause.

Metz, Holladay, Blume and Jaramillo also assert two arguments in support of their position that they are entitled to summary judgment. Initially, they contend that plaintiff cannot establish that they "initiated, continued or procured" the criminal proceedings against him. Next, they argue that plaintiff has not established a lack of probable cause.

 In order to prevail on his malicious prosecution claim, plaintiff must prove: (1) the defendant initiated, continued, or procured the proceeding of which the complaint is made; (2) the defendant in doing so acted without probable cause; (3) the defendant acted with malice; (4) the proceedings terminated in favor of plaintiff; and (5) plaintiff sustained damages. *Lindenman v. Umscheid*, 255 Kan. 610, 875 P.2d 964, 974 (1994). In analyzing these issues, "the court must bear in mind that malicious prosecution causes of action have long been disfavored in the law because they tend to discourage individuals from seeking redress in the courts." *Laing v. Shanberg*, 13 F.Supp.2d 1186, 1189 (D.Kan.1998). "The court, therefore, must construe the scope of the tort narrowly in order to protect litigants' right of access to the judicial process." *Id.*

On April 22, 2002, the court considered a motion to dismiss filed by defendants Hamilton, Meinecke and Rues. In that motion, they contended they were entitled to dismissal of all of the claims made against them by the plaintiff based upon absolute immunity. They asserted that plaintiff had failed to state claims against them because all of the claims were barred by prosecutorial immunity. The court considered the claims that appeared in the plaintiff's complaint. While acknowledging that plaintiff's complaint was not a "model of clarity or specificity," the court determined that some of the claims were barred by absolute immunity, but that some could proceed. We held that the following claims could proceed: (1) the defendants obtained false statements from potential witnesses; (2) the defendants swore to false affidavits in support of criminal complaints; and (3) the defendants made false statements or released false information to the press or public that were not part of court proceedings; and (4) the defendants intimidated individuals to prevent them from becoming witnesses for the plaintiff. The court, however, determined that all other claims involving the decision by the defendants to prosecute the plaintiff were barred by absolute immunity.

 Based upon a review of the pretrial order, the court is persuaded that the court has dismissed plaintiff's malicious prosecution claims against defendants Hamilton, Meinecke and Rues. These claims appear to arise from the decision of the prosecutors to bring the perjury charges against him. Such claims are barred by absolute immunity.

 To the extent that any malicious prosecution claims remained after the court's earlier order and in light of the claims asserted in the pretrial order, the court believes that the defendants are entitled to summary judgment on them.

Plaintiff has failed to establish a lack of probable cause for the perjury charges asserted against him. The record is replete with evidence supporting the decisions made by the prosecutors. See *Vanover v. Cook*, 260 F.3d 1182, 1190 (10th Cir.2001) (in determining the existence of probable cause, a court looks to the facts and circumstances as they appeared to the defendant at the time the prosecution was commenced). Initially, we note that Judge Andrews found probable cause at the preliminary hearing for the first perjury charge. Under Kansas law, this finding provides prima facie evidence of probable cause. *Swanson v. Fields*, 814 F.Supp. 1007, 1014 (D.Kan.), aff'd, 13 F.3d 407 (10th Cir.1993). Plaintiff has failed to present evidence to overcome this finding. The evidence in support of a finding of probable cause is overwhelming: (1) the testimony of Holladay and Metz during the Hernandez proceedings that plaintiff had prior knowledge of Oblander's drug use and his stealing drug evidence; (2) Welch's testimony that plaintiff had prior knowledge of Oblander's drug use; (3) polygraph examinations of Holladay and Metz establishing their truthfulness; (4) Oblander's March 1, 1999 statement that he previously had a cocaine abuse problem; (5) Oblander's Valley Hope medical records that reflected that he had a cocaine abuse problem, that he had acquired drugs from evidence, and that he had gone to Valley Hope after informing his wife and "partner" of his addiction; (6) testimony of the Valley Hope doctor in the Hernandez proceedings confirming the validity of the information found in the Valley Hope records.

 Turning to claims against Metz, Jaramillo, Holladay and Blume, we begin by determining if there is any support for the contention that these defendants initiated, procured or continued the prosecution against plaintiff. In *Allin v. Schuchmann*, 886 F.Supp. 793, 797–98 (D.Kan.1995) (citations and quotations omitted), Judge Theis summarized the law in Kansas in this area as follows:

> It is widely held that to institute, procure, or continue a prosecution requires more than testifying as a prosecution witness. One who merely responds to requests for information or who testifies as a witness does not, by those acts, institute or continue a proceeding. Liability may result if the defendant testifies in addition to other action, such as investigating the alleged crime, offering to pay some of the cost of prosecution, or going to the authorities with information known to be false when there is no request for such information and no ongoing investigation. However, [i]t is not enough that [the defendant] appears as a witness against the accused either under subpoena or voluntarily, and thereby aids in the prosecution of the charges which he knows to be groundless. His share in continuing the prosecution must be active, as by insisting upon or urging further prosecution. A defendant is not liable for appearing as a witness even though the testimony may be perjured because the necessities of a free trial demand that witnesses are not deterred by fear of tort suits. Furthermore, to permit malicious prosecution actions against prosecution witnesses would give those witnesses an interest in the outcome of the case since only a conviction would provide them immunity from suit.

The evidence fails to show that these defendants initiated, procured or continued the prosecution against the plaintiff. The evidence provided by these defendants was only a part of the evidence relied upon by the prosecutors to initiate the perjury action against plaintiff. Plaintiff has suggested that liability exists because (1) the testimony and information provided by these defendants was false; and (2) these defendants hired a special prosecutor to

assist in the prosecution of him. Even if the testimony offered by these defendants is false, the court is not persuaded that these defendants initiated, procured or continued the first prosecution against the plaintiff. The uncontroverted facts here show that the prosecutors had and used their discretion to initiate the perjury charges against the plaintiff. Moreover, the evidence establishes that the prosecutors considered other evidence in determining whether to pursue a perjury charge against the plaintiff. In sum, the court finds that these defendants were only prosecution witnesses and played no active role in the initiation of the criminal charges.

The court's conclusion is not changed by the fact that these defendants hired a special prosecutor under K.S.A. 19–717 for the trial of the first prosecution. The uncontroverted facts do show that these defendants hired counsel under this statute. The uncontroverted facts, however, also show that Hamilton was in control of the prosecution and did not consult with these attorneys on strategy. Even more importantly, it is uncontroverted that the attorneys hired by these defendants entered their appearances after the charges were brought and withdrew prior to the start of the trial. These circumstances fail to offer any support that the defendants initiated, procured or continued the first prosecution against the plaintiff.

 Even assuming arguendo that there was some evidence that these defendants initiated, procured or continued the first prosecution against plaintiff, the court is persuaded for the reasons mentioned previously that there was probable cause for the prosecution. Accordingly, the defendants would be entitled to summary judgment on this basis as well.

Finally, we note that there is no evidence that these defendants or any defendant other than Hamilton initiated, procured or continued the second prosecution. Accordingly, these defendants as well as Rues and Meinecke are entitled to summary judgment on any claim of malicious prosecution arising from the second prosecution. Hamilton, as stated previously, is entitled to summary judgment on this claim based upon absolute immunity.

With these decisions, the court finds that the defendants are entitled to summary judgment on all of plaintiff's malicious prosecution claims.

### B. Abuse of Process

 Plaintiff has also asserted an abuse of process claim against Hamilton, Meinecke, Rues, Metz, Holladay, Blume and Jaramillo. Plaintiff has suggested that these defendants, with an ulterior motive, used legal process in a wrongful manner by prosecuting and assisting in the prosecution of the two perjury cases. Plaintiff asserts that Hamilton, Meinecke and Rues used the perjury charges against him as a means of inducing him to testify against Meneley or, in the alternative, as retaliation for not testifying against Meneley.

 In Kansas, the elements of an abuse of process claim are: (1) that the defendant made an illegal, improper, perverted use of the process, (a use neither warranted nor authorized by the process), (2) that the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use of the process, and (3) that damage resulted to the plaintiff from the irregularity. *Porter v. Stormont–Vail Hospital*, 228 Kan. 641, 621 P.2d 411, 416 (1980) (citations and quotations omitted). The gist of tort of abuse of process is not commencing an action or causing process to issue without justification, but misusing or misapplying process justified in itself, for an end other than that which it was designed to accomplish.

*Ahring v. White,* 156 Kan. 60, 131 P.2d 699, 702 (1942). Thus, the prerequisites for an abuse of process claim are that there must have been an ulterior purpose in the filing of the action or in the use of whatever process was employed, and second, it is necessary to have a willful act in the use of process, one not proper in the course of the regular conduct of the proceedings. *Tappen v. Ager,* 599 F.2d 376, 379–80 (10th Cir.1979).

The defendants contend they are entitled to summary judgment because plaintiff has failed to show any ulterior purpose for any of the actions taken by them. We must agree. There is no evidence to support plaintiff's allegation that the defendants used the perjury charges against him as a means of inducing him to testify against Meneley or, in the alternative, as retaliation for not testifying against Meneley. This allegation is based solely upon conjecture and speculation. As a result, the prosecution defendants and the deputy defendants are also entitled to summary judgment on this claim.

With this decision, the court need not consider any of the other arguments raised by the defendants concerning this claim.

### V.

The court has determined that all defendants are entitled to summary judgment on all remaining claims asserted by the plaintiff.[8]

**IT IS THEREFORE ORDERED** that defendants' motions to exclude (Doc. ## 174, 177, 183, 184, 185 and 186) be hereby denied as moot.

**IT IS FURTHER ORDERED** that plaintiff's motions for extension of time to files responses (Doc. ## 219, 220 and 221)

be hereby granted. The responses filed by plaintiff are deemed timely filed.

**IT IS FURTHER ORDERED** that plaintiff's motions to strike summary judgment motions (Doc. ## 226, 232 and 235) be hereby denied.

**IT IS FURTHER ORDERED** that defendants' motions for summary judgment (Doc. ## 211, 212 and 222) be hereby granted. Judgment is hereby granted to defendants Board of County Commissioners of Shawnee County, Kansas; Richard Barta; Joan M. Hamilton; Joel W. Meinecke; Tony W. Rues; Jack Metz; Daniel Jaramillo; Scott Holladay and Phillip Blume and against the plaintiff.

**IT IS SO ORDERED.**

---

8. With this conclusion, the court shall deny as moot the following motions: (1) motions of defendants Jaramillo, Metz, Holladay and Blume to exclude (Doc. ## 174 and 177); (2) motions of defendants Shawnee County Board of Commissioners and Barta to exclude (Doc. ## 183 and 184); and (3) motions for defendants Hamilton, Rues, Meinecke and Welch to exclude (Doc. ## 185 and 186).